**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

------------------------------------------------------
IN RE:                                          )
                                                )    CASE NO.        13-21751(ASD)
JEAN BARNICOAT,                                 )
                                                )    CHAPTER         7
     DEBTOR.                                    )
------------------------------------------------------
                                                )
BRISTOL CCH GROUP, LLC,                         )
d/b/a COUNTRYSIDE MANOR                         )
OF BRISTOL,                                     )
                                                )
     PLAINTIFF,                                 )
                                                )
VS.                                             )    ADV. PRO. NO.   13-2037
                                                )
JEAN BARNICOAT,                                 )    RE: ADV. ECF NO. 14
                                                )
     DEFENDANT.                                 )
------------------------------------------------------


**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

ALBERT S. DABROWSKI, CHIEF UNITED STATES BANKRUPTCY JUDGE

## I. INTRODUCTION

On August 27, 2013 (hereinafter, the "Petition Date"), the Debtor-Defendant, Jean Barnicoat (hereinafter, the "Debtor" or "Defendant"), commenced the instant bankruptcy case, Case No. 13-21751, by the filing of a voluntary petition under Chapter 7 of the United States Bankruptcy Code. Anthony S. Novak was appointed as the Chapter 7 trustee (hereinafter, the "Trustee"). Included in the Voluntary Petition, is what the Debtor lists as an unsecured, non-priority debt owed to "Countryside Manor of Bristol" in the amount of $38,813.21 for "medical expenses." *See* Schedule F. On Schedule G the Debtor lists an executory contract (described as a "Resident Admissions Agreement with skilled nursing facility") (hereinafter, the "Admission Agreement") with "Countryside Manor of Bristol."

On October 22, 2013, Plaintiff, Bristol CCH Group, LLC, doing business as Countryside Manor of Bristol (hereinafter, "Countryside Manor"), a duly licensed chronic care and convalescent facility located in Bristol, Connecticut, commenced the instant Adversary Proceeding, Adv. Pro. No. 13-2037, by the filing of a Complaint (hereinafter, "the Complaint") seeking a declaratory judgment by the Court that the Admission Agreement entered into between Countryside Manor and the Defendant on July 30, 2012, prior to the Petition Date, is not an executory contact within the meaning of Bankruptcy Code §365 and therefore, is not subject to rejection.[1]

---

[1] The Debtor has not taken any specific action to "accept" or "reject" the contract. Nor has the Trustee. If the Admission Agreement was an executory contract, according to Bankruptcy Code §365(d)(1), where a Chapter 7 trustee has not assumed or rejected the contract within 60 days after the order for relief (or by the date of any extension of time) "then such contract . . . is deemed rejected." "In the event of rejection, the non-debtor party is generally relegated to pursuing an unsecured prepetition claim against the estate. *In re Child World, Inc.*, 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992) ('[R]ejection under 11 U.S.C. § 365(a) simply means that the court will permit the debtor to breach the contract, with the result that the contractual obligations will be reduced to general unsecured claims for prepetition

The Defendant has not responded to the Complaint and no attorney has appeared in this adversary proceeding on her behalf. On December 2, 2013, the Bankruptcy Clerk's Office, upon the motion of Countryside Manor, entered a default against the Defendant, Adv. ECF No. 7. Thereafter, on December 26, 2013, Countryside Manor filed a *Motion for Summary Judgment*[2] (hereinafter, the "Motion"), Adv. ECF No. 11, along with *Bristol CCH Group, LLC's Memorandum of Law in Support of Motion for Summary Judgment* (hereinafter, the "Memorandum") (containing in Part III a "Statement of Material Facts Not in Dispute")*,* Adv. ECF No. 11-2 and an *Affidavit in Support of Motion for Summary Judgment* (hereinafter, the Supporting Affidavit"), Adv. ECF No. 11-3.

On May 6, 2014, the Court entered a *Brief Memorandum and Order on Plaintiff's Motion for Summary Judgment . . .* , Adv. ECF No. 12, holding that the Motion was deficient because the Plaintiff had (i) failed to file and serve on the Defendant the *Notice to Pro Se Litigant Opposing Motion for Summary Judgment as Required By Local Rule of Civil Procedure 56(b)* along with copies of the full text of Fed. R. Civ. P. 56 and Local Rule 56 as required, and (ii) failed to annex to the Motion in accordance with Local Rule 56(a) a document entitled "Local Rule 56(a)1 Statement."[3]

---

damages pursuant to 11 U.S.C. § 365(g)(1).'").*COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d 373, 378 (2d Cir. 2008).

[2]Section (a) of Fed. R. Civ. P. 56, (hereinafter, "Rule _") made applicable to this proceeding by Fed. R. Bank. P. 7056, directs that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

[3]Local Rules of the United States District Court for the District of Connecticut which supplement Rule 56(c) require, *inter alia*, that the movant annex to its motion papers a document entitled a Local Rule 56(a)1 Statement which sets forth in separately numbered paragraphs, meeting the requirements of Local Rule 56(a)3, a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried. The purpose of Local Rule 56(a)1 is to assist the court in the efficient determination of motions for summary judgment and thereby conserve limited and valuable judicial resources. It is intended "to aid the Court, by directing it to the material facts that the movant claims are

Thereafter, on May 22, 2014, the Plaintiff filed and served upon the Defendant *Bristol CCH Group, LLC's Amended Motion for Summary Judgment* (hereinafter, the "Amended Motion"), *Bristol CCH Group, LLC's Memorandum of Law In Support of Amended Motion For Summary Judgment* (hereinafter, the "Amended Memorandum"), and Supporting Affidavit, Adv. ECF No. 14, along with the requisite *Notice to Pro Se Litigant . . .* and related documents. The Plaintiff also attached to the Amended Motion a *Local Rule 56(a)1 Statement*. No response having been filed by the Defendant within 21 days of the filing of the Plaintiff's Amended Motion, the Court, having now fully reviewed and considered the files and records of the case and adversary proceeding, is prepared to determine the Amended Motion.[4]

## II. UNDISPUTED FACTS

Based upon the files and records of the instant bankruptcy case and adversary proceeding, including the Amended Motion, the Amended Memorandum and the Rule 56(a)1 Statement and Supporting Affidavit, and noting the absence of any response thereto, the Court finds the following facts to be undisputed.[5]

---

undisputed and that the party opposing the motion claims are disputed." *Coger v. Connecticut*, 309 F. Supp.2d 274, 277 (D.Conn. 2004).

[4] In deciding an unopposed summary judgment motion, the "court must still assess whether the moving party ha[s] fulfilled its burden of demonstrating that there is no genuine issue of material fact and its entitlement to judgment as a matter of law." *See Vermont Teddy Bear Co., Inc. v. 1-800 BEARGRAM Co.*, 373 F.3d 241, 246 (2d Cir. 2004). "If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied *even if no opposing evidentiary matter is presented*." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006), quoting, *Vermont Teddy Bear* at 244.

[5] Local Rule 56(a)1 provides in pertinent part that "[a]ll material facts set forth in [the Local Rule 56(a)1 Statement] will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Local Rule 56(a)2."

On or about July 18, 2012, Alan Barnicoat, the husband of the Defendant (hereinafter, the "Husband"), was admitted as a patient/resident of Countryside Manor, a chronic care and convalescent facility.  On or about July 30, 2012, the Defendant executed an Admission Agreement as a Responsible Party and became a party along with her Husband to the Admission Agreement.  In accordance with the Admission Agreement, Countryside Manor provided Alan Barnicoat with care and services, including twenty-four hour general nursing care, room and board, meals, personal laundry service, linens and bedding, and assistance with daily living activities (hereinafter, collectively, "Care and Services").

As a Responsible Party, Jean Barnicoat is required, *inter alia*, to use her access to her Husband's income in order to apply such funds as required to pay for his Care and Services at Countryside Manor and, if he becomes Medicaid eligible, pay over each month to Countryside Manor such cost sharing amount as is determined by the Connecticut Department of Social Services (hereinafter, "DSS") to be the Husband's financial obligation to Countryside Manor for his care.[6]

---

[6]     The relevant provisions of the Admission Agreement state as follows:
If the Responsible Party has control of or access to the Resident's income and/or assets, the Responsible Party agrees that these funds shall be used for the Resident's welfare, including but not limited to making prompt payment for care and services rendered to the Resident in accordance with the terms of this agreement.

Admission Agreement at V.

\* \* \* \*

The Resident and Responsible Party agree that, during the pendency of any application for Medicaid assistance, the Resident's monthly income, less a personal needs allowance as established by the Connecticut Department of Social Services, will be paid to the Facility on or before the tenth day of each month.  The Resident and Responsible Party further agree that, if the Resident is determined by the Connecticut Department of Social Services to be eligible for Medicaid assistance, the amount of the Resident's monthly income established by the Department as "applied income" will be paid monthly to the Facility on or before the tenth day of each month.

DSS granted Medicaid assistance to the Husband, effective July 1, 2012. DSS determined that as of July 1, 2012, the Defendant could keep $954.40 from the Husband's monthly pension income each month as a spousal allowance. DSS also determined that the Husband's cost-share for his nursing home care, or "applied income"[7] due each month was $3,509.82 between July 1, 2012 through June 30, 2013, and $3,752.77 as of July 1, 2013. Countryside Manor claims that as of August 5, 2013, the Debtor had failed to pay over a total of $35,303.39[8] of the Husband's "applied income" due Countryside Manor as required under the Admission Agreement and Medicaid. However, as long as the Husband remains a resident of Countryside Manor and is eligible for Title XIX, or Medicaid assistance, Countryside Manor is not permitted to discontinue providing Care and Services to him or discharge him due to nonpayment of "applied income" in accordance with Conn. Gen. Stat.§19a-535(b).[9]

### III.  DISCUSSION

The Bankruptcy Code does not define the term "executory contract." In *Eastern Air*

---

Admission Agreement at IV(7).

[7] "Applied income" is defined by DSS regulations as "that portion of the [individual receiving assistance's] countable income that remains after all deductions and disregards are subtracted." DSS Uniform Policy Manual Glossary of Terms, Transmittal: 96-2, 1-1-96.

[8] As noted earlier, the Debtor scheduled her debt to Countryside Manor in the amount of $38,813.21. For purposes of this proceeding, which is not considering the dischargeability of prepetition debt, it is unnecessary for the Court to determine the actual amount due as of the Petition Date.

[9] This subsection provides:

> (b) A facility shall not transfer or discharge a patient from the facility except for medical reasons, or for the patient's welfare or the welfare of other patients, as documented in the patient's medical record; or, in the case of a self pay patient, for nonpayment or arrearage of more than fifteen days of the per diem chronic disease hospital room rates for the patient's stay, except as prohibited by the Social Security Act.

*Lines, Inc. v. Ins. Co. of Pa. (In re Ionosphere Clubs, Inc.)*, 85 F.3d 992 (2d Cir. 1996), the court characterized an executory contract as one "on which performance remains due to some extent on both sides," *id.* at 998-99 (quoting *Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6, 104 S. Ct. 1188 (1984)) (internal quotation marks omitted); *In re Penn Traffic Co.*, 524 F.3d at 379. The Second Circuit has also looked to the standard set forth by Professor Vern Countryman that an executory contract is one "'under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other.' Countryman, *Executory Contracts in Bankruptcy*: Part I, 57 Minn. L. Rev. 439, 460 (1973); *see* 3 Collier on Bankruptcy P365.02[1] (15th ed. rev. 2007),"[10] *In re Penn Traffic Co.*, 524 F.3d at 379.

Under these standards, the Admission Agreement is not an executory contract. While the Admission Agreement remains as to certain of its terms, an enforceable contract between the parties, it is not executory because a material breach of the Admission Agreement by the Defendant does not by virtue of the requirements of Conn. Gen. Stat. §§19a-535(b) excuse performance on the part of Countryside Manor. Further, once the Husband became qualified to receive Medicaid, the determination that the Defendant as a Responsible Party was required to pay over certain sums from her Husband's pension each month, arose from a statutorily-based determination by DSS, not by contractual agreement with Countryside Manor.

While not entirely on point, in *Hollander v. Brezenoff*, 787 F.2d 834, 839 (2d Cir.

---

[10] The Collier's citation is now located at 3 Collier on Bankruptcy P365.02[2]16th ed. 2014.

1986), a panel of the Second Circuit held that a nursing home's right to seek reimbursement from Medicaid arose by statute and not from its provider agreement and therefore, in that case applied the state's statute of limitations period. "We have said that a provider's right to reimbursement results from a 'statutory business relationship.' Although the relationship may be effectuated by means of a provider agreement, all rights to reimbursement arise under the applicable statutes" (internal citation omitted). Similarly here, where the Defendant's obligation to turn over the "applied income" arises from a determination by Medicaid, and not Countryside Manor, her obligation is imposed by statute.

Further, even assuming *arguendo* that the Admission Agreement was an executory contract, its deemed rejection by the Trustee would not relieve the Debtor from making the required post-petition payments. The failure of the Trustee to assume the Admission Agreement would not constitute a substantive breach allowing Countryside Manor to discharge the Debtor's Husband from the nursing facility. Conn. Gen. Stat. §19a-535(b) bars Countryside Manor from taking such action as it concerns Medicaid patients. Further, the purpose of rejection in a Chapter 7 case is to relieve *the estate* from assuming any liability under the contract. Whether a trustee rejects such a contract does not effect one way or another a debtor's future liability under that contract. Clearly, the Trustee in this case would have had no interest, financial or otherwise, in rejecting or assuming such a contract.

### IV. SUMMARY, CONCLUSION, ORDER AND JUDGMENT

For the reasons stated above, the Court determines that the Admission Agreement is not an executory contract and that such Agreement is not subject to acceptance or

rejection pursuant to §365 of the Bankruptcy Code.  Therefore, to the extent that the Husband continues to be eligible for Medicaid and to reside at Countryside Manor, the Husband's cost-share for his nursing home care, or "applied income" (as determined by DSS) continues to be due each month from him payable by the Defendant from the Husband's income so long as she continues to be the Responsible Party under the Admission Agreement.

In accordance with the above,

**IT IS HEREBY ORDERED** that the Amended Motion for Summary Judgment, Adv. ECF No. 14, filed by Bristol CCH Group, LLC, doing business as Countryside Manor of Bristol is **GRANTED**, and

**IT IS FURTHER ORDERED** that judgment shall enter in this proceeding in favor of Countryside Manor, in accordance with which

**IT IS HEREBY DECLARED, ADJUDGED AND DECREED** that the Admission Agreement is not an executory contract and, therefore, is not subject to acceptance or rejection pursuant to §365 of the Bankruptcy Code.

Dated: June 23, 2014                                                                            BY THE COURT

Albert S. Dabrowski
Chief United States Bankruptcy Judge